ALBANY,<br>August, 1806.

Jackson<br>v.<br>Hunter.

## Jackson *ex dem.* Crossett and others *against* Hunter.

THIS was an action of *ejectment*, for land in the township of *Aurelius*, in the county of *Cayuga*. The cause was tried at the circuit in the county of *Cayuga*, the 26th *June*, 1805, before Mr. Justice *Tompkins*, when a verdict was taken for the plaintiff, subject to the opinion of the court on the following case.

The lessors of the plaintiff were seized, &c. of lot number 39, and the defendant of lot number 48, in the township of *Aurelius*, and the only point in dispute was the true boundary between the two lots.

On the 25th *May*, 1802, the following warrant was issued by the *surveyor general* of the state, to *Joseph Annin*, a corresponding with their respective patents, and the map of the township on file in the office of the secretary of state.

*Margin note:* A mistake of a deputy surveyor, under the surveyor general, not appointed by the parties, in running the boundary lines of certain lots of land in the township of *Aurelius*, was allowed to be rectified so as to give to each party the quantity of land,

surveyor, and who was a witness at the trial, to survey to two tiers or ranges of lots in *Aurelius*, in one tier of which lot 39 is situated, and in the other tier, the lot 48, adjoining each other : " Whereas, it has been represented to me, that " the line between the fourth and fifth *tiers* of lots in the " township of *Aurelius*, (counting the tiers from the north " bounds of the township,) has not been run agreeably to the " map of the said township, filed in the office of the secre- " tary of the state, and according to which the grants of the " several lots thereof have been made, by reason whereof " the lots in the said fourth tier do not, as heretofore sur- " veyed, contain the quantities which they ought respec- " tively to contain : And whereas, it has by law been made " the duty of the surveyor general to lay out the lots in the " said township, according in the map filed in the secretary's " office as aforesaid, you are, therefore, authorised and re- " quested to run a line from the division line between the " said fourth and fifth tiers of lots, according to the maps " and grants thereof as aforesaid, that is to say, in such " manner as that the said fourth tier shall be of the breadth " of seventy-seven chains and forty-six links. Whereof " make a return," &c.

The line between these two ranges of lots was accordingly run pursuant to the warrant ; and it was found, that the line before run, gave to the lots in one tier about sixty-eight acres more than six hundred acres, while the lots in the other tier fell so many acres short of six hundred. The new line of division run by the surveyor, Mr. *Annin*, according to the directions of the surveyor general, gave to the lots in each tier, a square of six hundred acres. It appeared in evidence, on comparison with the field book of the survey of the township of *Aurelius* in the clerk's office, that one of the distances run, exceeded the true distance, upon actual sur- vey, above twelve chains.

The *patents* which were issued for the lots in question, did not describe them by any metes or bounds, courses or distances of lines run, but described them generally, as " known and distinguished on a map of the said township,

" filed by the surveyor-general in the office of the secretary " of·state agreeable to law."

*Emott* argued the case for the lessors of the plaintiff, and *Woodworth*, attorney general, for the defendant.

By the laws\* referred to in the argument, it appears, that on the 28th *February*, 1789, the commissioners of the land-office were authorised to direct the surveyor-general to lay out certain lands, comprehending the premises in question, into townships of 60,000 acres each, and these townships into one hundred lots each, and each lot to be as nearly square as possible, and to contain 600 acres each, and to be num. bered in numerical order. One copy of such map was to be filed in the office of the secretary of state, and another in the office of the surveyor-general. The lots were to be then balloted for, by the persons who were entitled to them.—— And the surveyor-general was directed to run the *out-lines* of each township, at the expense of the state, and make a map thereof; and on the same map to subdivide the townships into lots of six hundred acres each, one copy of which map was to be filed in the secretary's office, and another in the office of the clerk of the county where the lands were situated; and patents were to issue for each lot agreeably to such map on file in the secretary's office.

*Per Curiam.* There is an evident mistake made by the deputy-surveyor first employed to run the lines, and he was appointed without the consent of the parties. The map filed in the office of the secretary of state, and referred to in the patents for the lots, is correct and agreeable to law. The defendant has got more land, and the plaintiff less, than they ought to have had, by their respective patents. Nothing appears to have been done on the part of the plaintiff, by which he is concluded as to his right to have this mistake corrected. We are, therefore, of opinion, that the plaintiff is entitled to judgment.

Judgment for the plaintiff.